COOLEY LLP
BENEDICT HUR (SBN: 224018)
(bhur@cooley.com)
JONATHAN PATCHEN (SBN: 237346)
(jpatchen@cooley.com)
MICHAEL ROME (SBN: 272345)
(mrome@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

ELIZABETH B. PRELOGAR (SBN: 262026)
(eprelogar@cooley.com)
RAYMOND P. TOLENTINO (*Admitted Pro Hac Vice*)
(rtolentino@cooley.com)
EPHRAIM A. MCDOWELL (*Admitted Pro Hac Vice*)
(emcdowell@cooley.com)
1299 Pennsylvania Avenue NW, Suite 700
Washington, District of Columbia 20004-2400
Telephone:    +1 202 842 7800
Facsimile:    +1 202 842 7899

Attorneys for Plaintiffs GOOGLE LLC
and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE LLC and YOUTUBE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>Defendant. | Case No. 5:25-cv-09795-EJD<br><br>**GOOGLE LLC'S AND YOUTUBE, LLC'S MOTION FOR INJUNCTION PENDING APPEAL**<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Judge: The Honorable Edward J. Davila |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................... 1

RELIEF SOUGHT ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.      YOUTUBE IS LIKELY TO SUCCEED ON THE MERITS. ............................................. 3

        A.      SB 976's Personalized-Feed Provisions Burden Protected Expression. ................ 4

        B.      The Personalized-Feed Provisions Are Content-Based Restrictions That
                Fail Any Form of Heightened Scrutiny. .............................................................. 12

        C.      SB 976's Default Restrictions Are Void for Vagueness. ..................................... 14

II.     YOUTUBE AND ITS MINOR USERS FACE IRREPARABLE INJURY
        WITHOUT AN INJUNCTION. ..................................................................................... 14

III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT AN
        INJUNCTION PENDING APPEAL. .............................................................................. 16

CONCLUSION .......................................................................................................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

**PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Ent. Merchants Ass'n*,
 564 U.S. 786 (2011) .................................................................................................. 10, 11, 13

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
 596 U.S. 61 (2022) ............................................................................................................. 13

*Cmty. House, Inc. v. City of Boise*,
 490 F.3d 1041 (9th Cir. 2007) ........................................................................................... 16

*Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*,
 447 U.S. 530 (1980) ........................................................................................................... 12

*Cuviello v. City of Vallejo*,
 944 F.3d 816 (9th Cir. 2019) ............................................................................................. 15

*Doe v. Harris*,
 772 F.3d 563 (9th Cir. 2014) ........................................................................................ 15, 16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
 515 U.S. 557 (1995) ........................................................................................................... 10

*Labrador v. Poe*,
 144 S. Ct. 921 (2024) .................................................................................................... 14, 16

*Libertarian Party of L.A. Cnty. v. Bowen*,
 709 F.3d 867 (9th Cir. 2013) ............................................................................................. 15

*Matal v. Tam*,
 582 U.S. 218 (2017) ........................................................................................................... 12

*Meinecke v. City of Seattle*,
 99 F.4th 514 (9th Cir. 2024) ................................................................................................ 4

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024) ..................................................................................................... passim

*Nat'l Urban League v. Ross*,
 484 F. Supp. 3d 802 (N.D. Cal. 2020) ............................................................................... 15

*NetChoice v. Bonta*,
 761 F. Supp. 3d 1202 (N.D. Cal. 2024) ............................................................................. 16

*NetChoice v. Bonta*,
 761 F. Supp. 3d 1232 (N.D. Cal. 2025) ...................................................................... passim

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*NetChoice, LLC v. Bonta*,
   152 F.4th 1002 (9th Cir. 2025)...................................................................... 6, 7, 15, 16

*NetChoice, LLC v. Bonta*,
   170 F.4th 744 (9th Cir. 2026)........................................................................ 14

*Packingham v. North Carolina*,
   582 U.S. 98 (2017)........................................................................................ 16

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992)...................................................................................... 13

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)................................................................................. 12, 13

*Reuber v. Food Chem. News, Inc.*,
   925 F.2d 703 (4th Cir. 1991) (en banc)........................................................ 5

*Stanley v. Georgia*,
   394 U.S. 557 (1969)...................................................................................... 11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001)........................................................................ 16

*Turner Broad. Sys., Inc. v. FCC*,
   520 U.S. 180 (1997)...................................................................................... 13

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000)...................................................................................... 12

**Statutes**

Cal. Health & Safety Code
   § 27000.5(3) ................................................................................................... 9
   § 27001(a) ...................................................................................................... 1
   § 27002(b)(2) ................................................................................................. 1
   § 27002(b)(4) ................................................................................................. 1

**Other Authorities**

Ninth Circuit Rule 3-3(b) ................................................................................... 1

Fed. R. Civ. P. 62(d) ..................................................................................... 1, 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD**

**NOTICE OF MOTION**

Plaintiffs Google LLC and YouTube, LLC (collectively, "YouTube") will submit an amended notice of motion setting forth the date and time for hearing, if one is set by the Court.

**RELIEF SOUGHT**

YouTube has appealed this Court's order denying its motion for a preliminary injunction. Dkt. No. 108.  That appeal is subject to an expedited briefing schedule under Ninth Circuit Rule 3-3(b).  YouTube moves for an injunction prohibiting Defendant Rob Bonta from enforcing Sections 27001(a), 27002(b)(2), and 27002(b)(4) (together, the "personalized-feed provisions") of California Senate Bill 976 (the "Act" or "SB 976") against YouTube during its expedited appeal. *See* Fed. R. Civ. P. 62(d).  YouTube and its minor users face immediate and irreparable harm without an injunction, including the ongoing loss of First Amendment rights and the need to make costly structural changes to the YouTube platform.  In the alternative, YouTube moves for a 30-day injunction to afford the Ninth Circuit sufficient time to consider whether to grant its own injunction pending appeal.

Following the issuance of this Court's order, Counsel for YouTube, with Counsel for Plaintiffs Meta Platforms, Inc. and TikTok Inc., promptly conferred with Defendant about whether Defendant would agree to either (1) stay enforcement of the challenged provisions of SB 976 against Plaintiffs for the duration of the appeal, or (2) provide 30 days' notice prior to bringing an enforcement action against Plaintiffs while the appeal is pending.  Defendant rejected both proposals on August 10, 2026, necessitating this motion.  Given the expedited schedule for preliminary-injunction appeals in the Ninth Circuit, YouTube intends to move for an injunction pending appeal in the Ninth Circuit if this Court does not rule before close of business on August 18, 2026.

**ARGUMENT**

When this Court first considered SB 976 in NetChoice's suit, it rejected NetChoice's as-applied First Amendment challenge to the law's central provisions on associational-standing grounds and denied a preliminary injunction.  Nonetheless, the Court recognized that "the First Amendment issues raised by SB 976 are novel, difficult, and important, especially the law's

personalized feed provisions." *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1236 (N.D. Cal. 2025). The Court also acknowledged that if NetChoice was right that SB 976 violates the First Amendment, "its members and the community [would] suffer great harm from the law's restriction of speech" and that there is a "strong" "public interest . . . in maintaining a free flow of speech." *Id.* Given that SB 976 requires regulated platforms to "make significant changes to their feeds" that would "fundamentally reorient" those platforms' "relationship with their users," the Court saw "great value in testing the law through appellate review." *Id.* Therefore, despite having concluded that NetChoice was unlikely to succeed on the merits, the Court found "that an injunction pending appeal [was] appropriate to allow the opportunity for appellate review of these weighty issues" before the law was enforced. *Id.* The Court ultimately granted a 30-day injunction to give the Ninth Circuit "time to consider whether to grant its own injunction pending appeal," *id.*—and the Ninth Circuit then promptly enjoined the State from enforcing SB 976 during the entirety of the appeal, Dkt. No. 11.1, *NetChoice, LLC v. Bonta*, No. 25-146 (9th Cir. Jan. 28, 2025).

An injunction pending appeal is equally appropriate here. Now that YouTube's individual participation has cured any associational-standing concerns, the "novel, difficult, and important" First Amendment issues that this Court did not decide in NetChoice's suit are squarely presented. *NetChoice*, 761 F. Supp. 3d at 1235. Indeed, the "value [of] testing the law through appellate review" is even greater now that this Court has reached the merits of the as-applied First Amendment claims with the benefit of a detailed factual record. *Id.* YouTube and its minor users are irreparably injured by "the law's restriction of speech," and the public interest continues to favor "maintaining a free flow of speech." *Id.* As was true in NetChoice's suit, "appellate review of these weighty issues" is warranted before YouTube is forced to make large-scale structural changes to its platform that "fundamentally reorient" its "relationship with [its] users." *Id.* Therefore, this Court should follow the same course as the Ninth Circuit in *NetChoice* and grant an injunction pending appeal. At the very least, the Court should again enter a 30-day injunction to give the Ninth Circuit sufficient time to decide whether to grant its own injunction pending appeal.

This Court laid out the relevant standard in its *NetChoice* order. "When deciding whether to issue an injunction pending appeal, courts apply a standard 'similar to that employed by district

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

**PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD**

courts in deciding whether to grant a preliminary injunction.'" 761 F. Supp. 3d at 1234 (quoting *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016)). "Thus, they 'consider whether the moving party has demonstrated that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.'" *Id.* (quoting *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020)); *see* Dkt. No. 11.1, *NetChoice, LLC v. Bonta*, No. 25-146 (9th Cir. Jan. 28, 2025) (applying same standard). All four factors are satisfied here.

While this Court declined to issue a preliminary injunction, the Court previously observed that the standard for granting an injunction pending appeal can be "more flexible than a rigid application of the traditional four-part standard applicable to granting a preliminary injunction." *NetChoice,* 761 F. Supp. 3d at 1234 (citation omitted). The Court pointed out that Rule 62(d) expressly "contemplates that there will be situations where" an injunction pending appeal is appropriate notwithstanding a preliminary-injunction denial. *Id.* This is one such situation: YouTube has raised serious questions on the merits of a profoundly important First Amendment issue involving new and evolving technology, on which this Court has issued a first-of-its-kind decision; YouTube and its users face irreparable harm to their speech rights and significant compliance burdens without an injunction; and erring in favor of free speech during an appeal that will be resolved on an expedited basis best serves the public interest.

## I.  YOUTUBE IS LIKELY TO SUCCEED ON THE MERITS.

YouTube is likely to succeed on the merits because its personalized feeds are expressive compilations protected by the First Amendment, and SB 976 is a content-based restriction on YouTube's expression and its minor users' right to access that expression that cannot satisfy any level of heightened scrutiny.[1]  For the reasons outlined below, this Court erred by holding that the

---

[1] Given the posture of the case, YouTube restates its arguments in brief here, incorporating its prior briefing by reference, *see* Dkt. Nos. 23, 67, 95, 101, and focusing primarily on the Court's conclusion that personalized feeds are not protected expression.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

personalized-feed provisions do not implicate the First Amendment at all.  But this Court need not conclude that it was wrong for the merits factor to favor an injunction pending appeal.  Under the "unique likelihood-of-success standard in First Amendment cases," a plaintiff need only make "a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement" before "the burden shifts to the government to justify the restriction on speech." *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024) (citation omitted).  And as this Court previously explained, a court may issue an injunction pending appeal despite having denied preliminary-injunctive relief where the court has "chart[ed] a new and unexplored ground" by "rul[ing] on an admittedly difficult legal question." *NetChoice*, 761 F. Supp. 3d at 1236 (citation omitted).  That is the case here.  This Court's holding that the First Amendment does not protect personalized compilations of content produced using algorithms is unprecedented and has potentially enormous ramifications for all manner of online platforms and their users.  YouTube has at a minimum raised "serious questions going to the merits" on this "particularly important" "legal question." *Id.* (citation omitted).  That suffices for the merits factor to weigh in favor of granting an injunction pending appeal.

### A.    SB 976's Personalized-Feed Provisions Burden Protected Expression.

1.    In *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), the Supreme Court made clear that an entity "'exercis[ing] editorial discretion in the selection and presentation' of content is 'engage[d] in speech activity.'" *Id.* at 731 (citation omitted).  YouTube has exercised its editorial judgment to "select" and "present" content to users based on what they as individuals are likely to find "relevant, trustworthy, and valuable" and will "optimize[] for [their] long-term user satisfaction."   Goodrow Decl. ¶¶ 6, 13, Dkt. No. 23-1.  The First Amendment protects that expressive choice about how to "organize and prioritize" content and the "distinctive compilations of expression"—personalized feeds—that result from it. *Moody*, 603 U.S. at 716.  Indeed, *Moody* specifically held that YouTube's feeds are First Amendment-protected while recognizing that personalization implemented using algorithms is a defining characteristic of those feeds: The Court explained that "[t]he selection and ranking" of videos on YouTube is "achieved through the use of algorithms" and "is most often based on a user's expressed interests and past activities," producing

Cooley LLP
Attorneys at Law
San Francisco

4

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
Case No. 5:25-CV-09795-EJD

an "individualized list of video recommendations." *Id.* at 734-35.

This Court nonetheless concluded that YouTube's personalized feeds are not expressive and therefore not protected by the First Amendment. That was error.

The Court effectively separated the decisionmaking that results in YouTube's personalized feeds into two stages: (1) the initial decision to show users content they are likely to find interesting, relevant, and valuable, and (2) the downstream decision to show a user a particular video because she is likely to find it interesting, relevant, and valuable. The Court reasoned that the first decision is not expressive standing alone, and that the second does not count as YouTube's expression because it is carried out using an algorithm. Or to use the Court's "fill in the blank" framing, the Court concluded that when YouTube decides to "convey to users _____ because it is interesting, relevant, and valuable," only the granular decision to "fill in the blank" with, for example, a cat video is expressive. Consequently, a personalized feed would only be protected if humans handpicked the individual videos or topics that make up the feed. The Court's conclusion rests on flawed legal premises, gives insufficient weight to the record evidence about how YouTube's system works, and directly conflicts with *Moody*.

To start, YouTube's overarching choice to "organiz[e] and present[]" videos on its platform based on what is likely to be interesting, relevant, and valuable to each user and will foster long-term satisfaction is itself "expressive." *Moody*, 603 U.S. at 731. Publishers and curators of content commonly make the editorial judgment to tailor content to their readers' or listeners' interests. *See Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) (en banc) ("[I]t is hardly unusual for publications to print matter that will please their subscribers."). As the State admitted, if "Fox News . . . want[s] to convey an editorial criticizing Kamala Harris because they think that's what their audience would like," that is protected. Dkt. No. 102 at 114:7-16. YouTube could instead choose to fill its homepage with only the most viewed or liked videos, on the belief that users should be exposed to the most generically "popular" content. Or it could display only compilations of news clips, based on the judgment that viewers should be educated about current events. But YouTube has made a different editorial judgment based on its belief that personalized feeds best serve users by helping them find content that is relevant and enriching for them

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

personally. That decision to tailor a compilation of content to each particular user's interests is no less expressive than a one-size-fits-all choice to show the same type of content to all users. And *Moody* teaches that YouTube's use of a tool (here, an algorithm) to achieve its editorial goal does not eliminate First Amendment protection. To be sure, personalization algorithms are a modern technological advancement that allow for a degree of editorial tailoring never before possible. But "'[w]hatever the challenges of applying the Constitution to ever-advancing technology, the basic principles' of the First Amendment 'do not vary.'" *Moody*, 603 U.S. at 733 (quoting *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011)).

Moreover, YouTube's choice of what *kind* of personalized feed to provide is expressive. While the Court's opinion treats personalized feeds as a monolith, assuming that all such feeds are "dumb pipes" that uniformly and identically "reflect[] back to users their own perceived interests," the record shows that YouTube provides a distinct kind of personalized feed designed around its values. Op. 8, 10 (citation omitted). For example, because YouTube has decided to prioritize long-term satisfaction, it purposefully shows users content that is *different* from what they have viewed before so they can discover new content and creators and explore "more of what YouTube has to offer them." Goodrow Supp. Decl. ¶ 13, Dkt. No. 95-1; Goodrow Decl. ¶ 15 (describing goal of introducing a user to "new areas of interest she did not even know she had"). If YouTube's goal was to instead maximize short-term engagement, it may have designed a personalized feed consisting solely of content similar to what a user has watched in the past. As the Ninth Circuit recognized, a personalized algorithm could "'respond[] solely to how users act online,' merely 'giving them the content they appear to want.'" *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1014 (9th Cir. 2025) (citation omitted). Or a personalized algorithm could "promote[] a platform's own message to users." *Id.* Even the former would be expressive, but evidence of how YouTube's Recommender System actually works shows that it falls in the latter camp: It promotes YouTube's message that what it thinks will be most interesting, relevant, and valuable to users includes not only content they may appear to want based on what they have viewed before but also new, diverse content that they did not previously realize they would enjoy.

The Court's suggestion that YouTube relies solely on algorithms "to make the

determination of what is 'interesting,'" relevant, or valuable to users is incorrect.  Op. 9.  Humans at YouTube continually make editorial judgments about what kind of content should be deemed interesting, relevant, or valuable to users as they design, develop, test, monitor, and refine the algorithm—and those judgments are informed by YouTube's values as a platform, such as its goal "to help users achieve . . . education [and] inspiration" and "its mission to . . . show them the world."  Goodrow Decl. ¶¶ 7-8.  For example, as referenced above, YouTube decided that "interesting" and "valuable" content includes new and diverse content, which reflects a value judgment about the importance of "discovery and novelty."  Goodrow Supp. Decl. ¶ 13.  Carrying out that judgment requires a further "subjective decision" about whether topics like "physics and math [are] sufficiently different so that they count as diverse."  *Id.*  And further along the chain, YouTube engineers "handpick training examples" that teach the algorithm what the engineers consider to be sufficiently diverse and "which reflect the values they want to encourage or discourage."  *Id.* ¶ 10.  YouTube employees then monitor the system to ensure it is producing outputs aligned with YouTube's goal of promoting novelty and diversity.  *Id.* ¶¶ 19-21.  Even the State concedes that feeds resulting from a choice to convey "interesting" content are expressive as long as humans provide the parameters for what "interesting" means.  *See* Dkt. No. 102 at 159:14-22.  The State acknowledges, for example, that if a human defined "interesting" to mean "the latest news in the last 24 hours," that would be "an editorial decision."  *Id.*  That concession is fatal, as humans at YouTube are constantly defining and training the algorithm on what they mean by interesting, relevant, or valuable content.

The Ninth Circuit explained that "the more an algorithm implements human editorial directions, the more likely it is to be expressive."  *NetChoice*, 152 F.4th at 1014.  The record evidence shows that YouTube's algorithm implements a multitude of human editorial directions at every stage of the process.  Humans at YouTube decide "what editorial goals should be built into the . . . [s]ystem," select and design "signals [to] be used as inputs," establish principles for how to "translate those signals into recommendations," set "metrics to "measure[]" success, and continually "monitor," "test," and "refine" the algorithm to ensure outputs are aligned with YouTube's goals and values.  Goodrow Supp. Decl. ¶¶ 5, 7, 11, 14, 19, 22, 25.  This Court

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

discounted the human judgment integrated throughout YouTube's recommendation system on the ground that human involvement "does not transform a message that is not expressive at the outset into one that is." Op. 9. For the reasons explained above, YouTube's overall message to users that "these are videos that we think you will find interesting, relevant, and valuable" *is* expressive. But even if it were not, that would not automatically render non-expressive the many editorial judgments made by humans in operationalizing that overarching objective.

Notably, the Court's conclusion that personalized feeds are unprotected because humans do not personally select every video or subject matter that a user is likely to find interesting, relevant, or valuable cannot be reconciled with *Moody*. The *Moody* Court held that the First Amendment protects platforms' reliance on algorithms to make the "millions of . . . decisions each day" necessary to implement content-moderation policies at scale. 603 U.S. at 716; *id.* at 746 (Barrett, J., concurring) (using an algorithm to "implement human beings' inherently expressive choice[s]" does not negate First Amendment protection). Just like the personalized feed algorithms here, YouTube's content moderation algorithms that *Moody* held were protected can identify and curate content "without a person in the loop" after being trained to achieve goals set by humans. *Id.* at 745-46 (Barrett, J., concurring); *see* Zervas Supp. Decl. ¶ 20, Dkt. No 95-2. Thus, the "fill in the blank" logic that undergirds this Court's opinion would negate *Moody*. Indeed, the State's own expert witness, Dr. Hilbert, agreed that content moderation and personalization systems are similar and, in his view, "both lack the certainty required for constitutionally protected expression," Hilbert Rebuttal Decl. ¶ 38, Dkt. No. 89-4—a position that directly contradicts *Moody*.

Seeking to reconcile its decision with *Moody*, this Court posited that content moderation is different because humans at YouTube decide "we don't want _____ on our platforms" and also fill in the blank with, for example, nudity. *See* Op. 13. To be sure, some of YouTube's Community Guidelines prohibit specific topics or types of content, like nudity (although even then, the algorithm "fills in the blank" in the sense of making judgment calls about which particular videos violate the policy against nudity). But the Court overlooked that other Community Guidelines identify content that is not permitted on the platform based on more abstract qualities, like content that is "violent" or "dangerous," or consists of "spam" or "misinformation"—or to take the

Cooley LLP
Attorneys at Law
San Francisco

8

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
Case No. 5:25-cv-09795-EJD

Supreme Court's example, "deceptive" content, *Moody*, 603 U.S. at 735. Under this Court's reasoning, feeds implementing a content-moderation policy against "deceptive" content—which requires nuanced determinations about what counts as "deceptive"—would not be protected. After all, humans at YouTube decide that "users should not be shown _____ because it is deceptive," but they do not "fill in the blank" with, for example, an AI-generated video of the President or a video advertising a pyramid scheme. But *Moody* specifically held that the First Amendment protects YouTube's use of algorithms to implement its Community Guidelines, including its policy disfavoring "deceptive" content. *Moody* therefore compels the conclusion that YouTube's use of algorithms to implement personalization intended to convey "interesting, relevant, and valuable" content is likewise protected.

This Court also erroneously concluded that content moderation and personalization are entirely distinct and separable stages in the recommendation process, such that prohibiting personalization has no impact on platforms' ability to engage in content moderation. While that may be true of some stylized, generic recommendation system, that is not true of YouTube's Recommender System, as the platform-specific facts in the record show. Consider YouTube's content-moderation policy against repeatedly recommending to teens certain content that, while not problematic as a single video, could be problematic if viewed in high quantities. Goodrow Decl. ¶¶ 17, 31. YouTube cannot effectively implement that policy without considering what videos a particular teen user has watched in the past. Or consider YouTube's objective of providing age-appropriate content to minors of different ages. In a footnote, the Court suggested that SB 976 would not interfere with YouTube's age-appropriateness policies because "Section 27000.5(3) appears to exempt from this section feeds in which the media generated is based on 'device communications or signals concerning whether the user is a minor.'" Op. 13 n.5. That misunderstands how both the law and YouTube's age-appropriate recommendations work. Section 27000.5(3) permits YouTube to consider only "*whether* the user is a minor," i.e., a binary signal as to whether the user is under 18 or not. But YouTube recognizes that what may be "age-appropriate" for a 17 year old may not be for an 11 year old, and vice versa. YouTube has therefore worked with outside experts to identify high-quality content that is appropriate specifically for children

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

under age 13.  *See* Goodrow Decl. ¶ 29.  SB 976, however, prevents YouTube from being able to direct recommendations for that content to only its under-13 users, instead requiring it to treat minors as an undifferentiated mass.  SB 976 thus prohibits YouTube from implementing an expressive judgment that necessarily relies on combining personalization (the user's specific age) and content standards, in contravention of *Moody*.

Even assuming content moderation and personalization could be neatly disaggregated, the Court offered no valid justification for why content moderation is protected but personalization is not.  The Court reasoned that "implementation of Plaintiffs' content moderation decisions, unlike personalization, carries with it a moral valence."  Op. 12; *see id.* at 16-17.  But the Supreme Court has never held that in order for speech to be protected by the First Amendment, it must reflect a moral stance.  While the Court stated in *Brown* that the First Amendment protects "moral judgments about art and literature," it was not holding that *only* moral judgments about art and literature are protected.  Op. 17 (quoting 564 U.S. at 790).  A compilation need not even convey a "succinctly articulable message" to receive protection.  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995).  If the New York Times chooses to prioritize articles about events occurring in New York on its front page over events occurring elsewhere in the country, that would be a protected editorial judgment.  But that is not because The New York Times thinks news about New York is inherently "good" or "bad" or morally "better" or "worse" than news about San Francisco or Washington, DC.  In any event, YouTube's editorial decision to show particular users compilations of content YouTube believes they are likely to find interesting, relevant, and valuable can be framed in the same "moral" terms as YouTube's content-moderation decisions.  This Court reasoned that content-moderation policies are protected because they reflect content that the platforms "disfavor" or "find objectionable."  Op. 15.  Similarly, YouTube's decision to use personalized feeds reflects its view that showing users content that is uninteresting, irrelevant, and not valuable to them is "objectionable" and should be "disfavored."

Finally, the Court's holding is unprecedented and has serious ramifications for the scope of First Amendment protection on the internet.  This Court has "chart[ed] a new and unexplored ground" involving complex technology, becoming the first court in the country to decide that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

personalized feeds are likely not protected by the First Amendment. *NetChoice*, 761 F. Supp. 3d at 1236 (citation omitted). Further, the State does not deny that it could categorically ban personalized feeds for *adults*—and not just on social-media platforms but on any website or app. On that view, the State could prohibit Spotify from providing users with song recommendations based on what they have listened to in the past, LinkedIn from highlighting job postings similar to those a user has previously viewed, or the New York Times from showing users articles tailored to their unique reading history—and the First Amendment would be wholly inapplicable. And the rationale underlying the Court's holding puts at risk *any* algorithmically-produced compilations, not just personalized recommendations. Taken to its logical conclusion, the decision could have staggering consequences for the protection of expression online. *See* Dkt. No. 95 at 6-7.

2.    The personalized-feed provisions also burden protected speech because they restrict YouTube's minor users' "right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969).[2] The Supreme Court squarely held in *Brown* that a State may not "prevent children from hearing" or viewing protected speech "*without their parents' prior consent*." 564 U.S. at 795 n.3 (emphasis in original). This Court reasoned that SB 976 does not violate minor users' right to access speech without parental consent because minor "users can still access content that might otherwise appear in their personalized feed by manual search." Op. 19. But this ignores that personalization on YouTube is designed to help users *discover* content that is interesting to them, which they would never know to search for to begin with in the absence of YouTube's expressive compilations that expose them to that content. *See* Goodrow Decl. ¶ 37 ("Personalization helps YouTube's users, who come from all walks of life, find content interesting and enjoyable to them

---

[2] The Court dismissed *Stanley*'s relevance on the ground that "the speech at issue was obscenity, and so categorically unprotected by the First Amendment." Op. 18. But that only suggests that *Stanley* stands for the more powerful proposition that "the Constitution protects the right to receive information and ideas" *even if they are unprotected*. Under that reading of *Stanley*, YouTube's minor users would have a First Amendment right to receive speech consisting of personalized feeds even if the feeds themselves were unprotected.

Cooley LLP
Attorneys at Law
San Francisco

11

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
Case No. 5:25-CV-09795-EJD

and discover interests they may not have even known they have."). Moreover, YouTube's search function itself relies on personalization to operate effectively and to ensure, for example, that an aspiring young artist who searches for "painting tips" does not receive only videos about home renovation. *See* Dkt. No. 23 at 16.

Therefore, restricting minors' access to personalized compilations and forcing them to instead rely on a degraded search function to filter through the billions of videos on YouTube still meaningfully *burdens* their speech rights. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000) ("The distinction between laws burdening and laws banning speech is but a matter of degree."). The Court appeared to read *Playboy* to hold that a law does not burden speech unless it renders that speech entirely inaccessible for at least some portion of the day. *See* Op. 19. But there is no principled reason why barring access to certain videos for some number of hours a day is a cognizable burden on speech but forcing users to manually search for relevant videos in an ocean of irrelevant content is not.

### B.    The Personalized-Feed Provisions Are Content-Based Restrictions That Fail Any Form of Heightened Scrutiny.

For the foregoing reasons, the Ninth Circuit is likely to reverse this Court's holding that personalized feeds do not implicate the First Amendment—demonstrating a likelihood of success on appeal. And although the Court did not reach these issues, the Ninth Circuit is also likely to hold that the personalized-feeds provisions are content-based restrictions that cannot satisfy any level of heightened scrutiny.

The personalized-feed provisions are content-based because they restrict speech with a particular kind of "communicative content": personalized speech, or speech that is likely to be interesting, relevant, and valuable to an individual user. *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015). Such a restriction is no less content-based than a prohibition on "controversial" or "disparaging" speech. *See Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 532, 537 (1980) (holding that a bar on distributing "controversial" speech is content-based); *Matal v. Tam*, 582 U.S. 218, 231, 243 (2017) (holding that a bar against registering "disparag[ing]" trademarks is viewpoint-based). In addition, the personalized-feed provisions impermissibly target

Cooley LLP
Attorneys at Law
San Francisco

12

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
Case No. 5:25-CV-09795-EJD

the "function or purpose" of speech (to provide content that is interesting, relevant, and valuable to each user) as a "proxy" for particular kinds of disfavored content (speech that is compelling to minor users). *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71, 74 (2022).

Because the personalized-feed provisions are content-based, they are "presumptively invalid," *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992), and are justified only if "they are narrowly tailored to serve compelling state interests," *Reed*, 576 U.S. at 163. Even content-neutral speech restrictions, though, must "advance[] important governmental interests unrelated to the suppression of free speech" and must "not burden substantially more speech than necessary." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997). The personalized-feed provisions fail either form of heightened scrutiny.

Far from advancing an interest "unrelated to the suppression of free speech," SB 976's core objective is to suppress protected speech that the State regards as "addictive" for minors. And even assuming the State has a valid interest, the personalized-feed provisions do not advance that interest because the State has failed to show *any* link—whether causal or correlative—between personalization and harm to minors. Indeed, in nearly 600 pages of expert materials, the State has not identified a single study showing that personalization, as opposed to social-media use generally or other features, causes or is correlated with harm to minors' health. Hall Decl. ¶¶ 26-34, Dkt. No. 67-1; Tucker Decl. ¶¶ 58-62, Dkt. No. 67-2; Pfeifer Decl. ¶ 82, Dkt. No. 67-3. Quite the opposite, the State relies on a study that affirmatively found *no link* between personalization on YouTube and harm to minors. *See* Dkt. No. 101 at 8. The personalized-feed provisions are also simultaneously underinclusive and overinclusive. They are "seriously underinclusive" because they allow minors to access allegedly "dangerous, mind-altering" content "so long as one parent . . . says it's OK," *Brown*, 564 U.S. at 802, and leave untouched other video-streaming services (like Netflix and Hulu) that also supposedly "addict" minors through personalized feeds. The law is also "vastly overinclusive," *id.* at 804, because it prohibits personalized content regardless of whether it consists of videos about disordered eating or videos showing how to solve an algebra problem, and treats all minors the same, regardless of whether they are 7 or 17 years old. Finally, SB 976 fails to account for obvious less restrictive alternatives like voluntary parental controls at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

the platform or device level, which YouTube already offers and which empower parents to limit their children's online activities *without* government suppression of speech.

### C.     SB 976's Default Restrictions Are Void for Vagueness.

YouTube is also likely to succeed on the merits of its independent Fourteenth Amendment claim that the default provisions' reliance on the undefined concept of a "verified parent" renders them void for vagueness.  The Court concluded that the default restrictions are not impermissibly vague because they "provide[] notice to operators of the subject services or applications that they must verify a person's status as a minor's 'parent' before modifying the default settings."  Op. 22. But the law does not provide sufficient notice of *how* a platform "must verify a person's status as a minor's 'parent.'"  The dictionary definition cited by the Court merely underscores that the requisite verification procedure could be anything from pressing a button "to confirm" that one is a parent to submitting a formal "oath or affidavit."  *Id.* (quoting Verify, Black's Law Dictionary (12th ed. 2024)).  Because the phrase "verified parent" does not allow "[b]usinesses of ordinary intelligence [to] reliably determine what compliance requires," it is unconstitutionally vague. *NetChoice, LLC v. Bonta*, 170 F.4th 744, 767 (9th Cir. 2026).

## II.     YOUTUBE AND ITS MINOR USERS FACE IRREPARABLE INJURY WITHOUT AN INJUNCTION.

In its order granting NetChoice a 30-day injunction pending appeal, this Court recognized that NetChoice's "members and the community [would] suffer great harm from the law's restriction of speech" and from the need "to make significant changes to [the platforms'] feeds."  761 F. Supp. 3d at 1236.  Absent an injunction pending appeal here, YouTube and its minor users would be subject to those very same irreparable harms.

Compelling YouTube "to alter [its] editorial policies and posting practices to comply with [a] new speech law . . . while its constitutionality under the First Amendment is being litigated" inflicts "irreparable harm."  *Labrador v. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring).  The law also harms the First Amendment interests of the larger community that relies on YouTube, including content creators who will be unable to reach their intended audiences and, most relevant here, minor users who will lose access to personalized feeds.  Those minor users will

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

be irreparably harmed by the inability to view compilations specifically identifying, among the billions of videos on YouTube, the content that is most likely to be enriching, valuable, and age-appropriate for them.  Instead, many minor users will open up YouTube to find a homepage filled with videos in foreign languages, intended for audiences of different ages, or on subjects of no interest to them.  As the Ninth Circuit reaffirmed in NetChoice's appeal, the "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *NetChoice*, 152 F.4th at 1024 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Therefore, "a colorable First Amendment claim" is all that is needed to show "irreparable injury sufficient to merit the grant of relief."  *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (citation omitted).

That the State has not yet enforced the law against YouTube does not negate that injury.  A law "need not be enforced against a speaker to pose a threat to his free speech rights."  *Cuviello v. City of Vallejo*, 944 F.3d 816, 832-33 (9th Cir. 2019).  A "threat of enforcement rather than actual enforcement" is sufficient to "chill . . . free speech rights," and therefore "constitutes irreparable harm."  *Id.* at 833; *see Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.").  YouTube faces a credible and imminent threat of enforcement:  The State refused to stay enforcement during the appeal.  And while the State previously agreed to provide 30 days' notice of an enforcement action while the preliminary injunction motion was pending before this Court, the State has now declined to extend that agreement and provide YouTube with any notice before bringing an enforcement action while the case is on appeal.  The possibility that the State could enforce the law against YouTube at any time chills YouTube's speech by forcing YouTube to risk sweeping liability if it provides compilations reflecting its expressive message to minor users.

The immediate threat of enforcement also imposes substantial compliance burdens on YouTube.  To comply with SB 976, YouTube would need to fundamentally restructure its platform, "expending" significant "money or resources" that "cannot be recouped."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 806 (N.D. Cal. 2020) (citation omitted).  Personalized feeds are a central building block of the YouTube platform; disabling access to them for a large swath of users would

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD

require YouTube to overhaul its engineering infrastructure and practical operations.  In addition to restricting access to personalized feeds, YouTube would need to design and engineer an alternative system for organizing the billions of videos on the platform, which would necessarily be less effective at helping users find content relevant and interesting to them.  In essence, then, SB 976 compels YouTube to create an entirely new product—and given the immense difficulty of curating videos that users will find interesting, relevant, and valuable without personalization, that new product may very well be unappealing to users and drive them away.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("threatened loss of prospective customers or goodwill" constitutes "irreparable harm"); *see also Labrador*, 144 S. Ct. at 929 (Kavanaugh, J., concurring) (company forced to "restructure [its] operations" or "build new facilities" suffers irreparable harm).  YouTube should not be required to undertake such costly and radical changes to its platform while the Ninth Circuit considers its appeal.

## III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT AN INJUNCTION PENDING APPEAL.

YouTube has "raised 'serious First Amendment questions,'" which "compels a finding that . . . 'the balance of hardships tips sharply in [its] favor.'"  *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (citation omitted).  And the Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe*, 772 F.3d at 583.  As this Court previously stated, "[t]here is a strong public interest in protecting free speech." *NetChoice v. Bonta*, 761 F. Supp. 3d 1202, 1228 (N.D. Cal. 2024).  YouTube is a centerpiece of the "modern public square," *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017), serving as the preeminent platform for sharing and discovering video content, as well as television, podcasts, and music, *see* Dkt. No. 6 ¶ 2.  The equities and public interest therefore favor temporarily enjoining the challenged provisions and "maintaining a free flow of speech" while the Ninth Circuit considers YouTube's appeal, *NetChoice*, 761 F. Supp. 3d at 1236—especially given that the State "can pursue" its purported "interest in less intrusive ways" in the interim, *NetChoice*, 152 F.4th at 1025.

### CONCLUSION

This Court should grant YouTube's motion for an injunction pending appeal.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

**PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL
CASE NO. 5:25-CV-09795-EJD**

Dated:   August 11, 2026                    COOLEY LLP


By: */s/ Elizabeth B. Prelogar*
       Elizabeth B. Prelogar

Attorney for Plaintiffs Google LLC and
YouTube, LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17